STANLEY M. SAMPSON, administrator[1], vs. CITY OF LYNN
& others[2].

Suffolk. February 6, 1989. — May 4, 1989.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil*, Judgment on the pleadings. *Negligence*, Municipality. *Firearms*. *Municipal Corporations*, Liability for tort, Officers and agents, Duty to prevent harm.

A complaint alleging that the city of Lynn was negligent in issuing a firearms license to a resident of the town of Winthrop who was an "unfit . . . person not competent to [carry] a gun," and that this negligence proximately caused the death of plaintiff's decedent was legally insufficient to survive the city's motion under Mass. R. Civ. P. 12 (c) for judgment on the pleadings, where the allegations in the complaint failed to support claims that the city owed the decedent a special duty different from that owed to the public at large and that the city's purported negligence created a risk of immediate and foreseeable injury. [30-32]

CIVIL ACTION commenced in the Superior Court Department on March 3, 1983.

The case was heard by *Robert S. Prince*, J., on a motion for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Theodore J. Dennis* for the plaintiff.

*Charles M. Burnim* (*Nicholas Curuby*, City Solicitor, with him) for the city of Lynn.

LIACOS, J. The plaintiff brought an action in the Superior Court alleging, in count 2 of the amended complaint, that the city of Lynn (city) was negligent in issuing a license to possess

---

[1] Of the estate of S. Michael Sampson.

[2] Joseph A. DeCicco, Gary DeCicco, and Midland Hotel Corp. Judgment against Joseph A. DeCicco was entered in the sum of $963,000, plus interest and costs. The counts against Midland Hotel Corp. and Gary DeCicco were dismissed with prejudice. These judgments are not the subject of this appeal.

a firearm and that this negligence proximately caused the death of S. Michael Sampson (decedent). The city moved for judgment on the pleadings under Mass. R. Civ. P. 12 (c) and (h) (2), 365 Mass. 754 (1974). A judge in the Superior Court allowed this motion, and judgment was entered for the city. We affirm the judgment.

"The effect of a motion for judgment on the pleadings is 'to challenge the legal sufficiency of the complaint.' *Burlington* v. *District Attorney for the N. Dist.*, 381 Mass. 717, 717-718 (1980). . . . 'For purposes of the court's consideration of the [rule 12 (c)] motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false.' 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1368, at 691 (1969)." *Minaya* v. *Massachusetts Credit Union Share Ins. Corp.*, 392 Mass. 904, 905 (1984). Pursuant to this standard, we summarize the facts alleged in the complaint.

On October 7, 1981, the chief of police of Lynn (chief) issued a gun permit to Joseph A. DeCicco. In his application for the permit, DeCicco had stated falsely that he was a resident of Lynn, when in fact he was a resident of the town of Winthrop. The complaint also alleges that DeCicco "was a disreputable person, was unfit, improper and a person not competent to [carry] a gun." Agents and employees of the city did not investigate the truth of DeCicco's statement regarding his residence; nor did they determine whether DeCicco was a fit person to carry a gun. They made no inquiry of any official in Winthrop, where DeCicco was known to be an unfit person.

On September 5, 1982, the decedent was a guest at a wedding reception at a hotel in Peabody. DeCicco was also present, and he had in his possession a Walther handgun. DeCicco negligently caused the gun to fire, and a bullet entered the decedent's brain. The decedent died on September 11, 1982.

The plaintiff claims that the chief, and hence the city, owed the decedent a "special duty," thus making the public duty doctrine inapplicable. We disagree. "[I]n the absence of a special duty owed to the [decedent], different from that owed to

the public at large," an action for negligently issuing a gun permit cannot be maintained. *Dinsky* v. *Framingham*, 386 Mass. 801, 810 (1982). We conclude that, based on the allegations in the complaint, the city cannot be deemed to have owed the decedent a "special duty."

The plaintiff has not pointed us to any statutes or ordinances which establish that the city owed the decedent, as a member of an identifiable subclass, a special duty of care. Cf. *Irwin* v. *Ware*, 392 Mass. 745, 762 (1984); *A. L.* v. *Commonwealth*, 402 Mass. 234, 241 (1988). General Laws c. 140, §§ 121, 129B, 131 (1986 ed.), establish the procedures which govern issuance of firearms permits by licensing authorities. The statute does not evince a legislative intent to protect a particular group of individuals. Rather, the beneficiaries of the statute are members of the general public. See *Dinsky* v. *Framingham, supra* at 808-810.

The plaintiff has not alleged any foreseeable risks, the knowledge of which would have enabled the city to prevent the harm which ultimately occurred. This is not a case like *Irwin* v. *Ware, supra* at 756, where the police officer was aware of the risk that the intoxicated driver posed to other motorists. Nor is this a case like *A.L.* v. *Commonwealth, supra* at 241, where it was foreseeable that a convicted child molester would be likely to molest young boys. The allegations in this case do not support a claim that the city's purported negligence created a risk of immediate and foreseeable injury. See *Appleton* v. *Hudson*, 397 Mass. 812, 816 (1986); *Nickerson* v. *Commonwealth*, 397 Mass. 476, 478 (1986); *Ribeiro* v. *Granby*, 395 Mass. 608, 612 (1985). There is no allegation in this case that the city or its agents had knowledge that DeCicco had any intent to use the gun to cause harm to someone. Indeed, the fatal shooting, according to the allegations in the complaint, was due to DeCicco's negligence. A more thorough investiga-

tion would not have made foreseeable the accidental shooting of the decedent almost one year after the issuance of the license.[3]

*Judgment affirmed.*

---

[3] We note that the statute governing firearms licenses does not require the licensing authority to ascertain an applicant's skill at handling firearms. See G. L. c. 140, §§ 129B, 131.