## JOSE MINAYA & others[1] *vs.* MASSACHUSETTS CREDIT UNION SHARE INSURANCE CORPORATION.

Essex.  February 8, 1984. — August 28, 1984.

Present: WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil,* Judgment on the pleadings. *Nuisance. Negligence,* One owning or controlling real estate.

Discussion of the principle that an owner of land who has maintained a nuisance thereon may not be discharged of responsibility for that nuisance merely by either failing to pay property taxes or by transferring title to the land, until the new title holder has had a reasonable time to correct the nuisance. [906-908]

A complaint alleging that certain dwellings were destroyed by a fire proximately caused by dangerous conditions maintained by the defendant on an adjacent property, that the condition of the property had created a nuisance for which the defendant was liable, and that the defendant had continued to maintain the nuisance "for several days" after the city of Lynn recorded a final decree in its favor vesting title to the property was legally sufficient to survive the defendant's motion under Mass. R. Civ. P. 12 (c), for judgment on the pleadings, despite the defendant's answer denying liability and asserting the affirmative defense that the city was the owner of the property at the time of the fire. [908]

CIVIL ACTION commenced in the Superior Court Department on January 17, 1983.

The case was heard by *Murphy,* J., on a motion for judgment on the pleadings.

The Supreme Judicial Court granted a request for direct appellate review.

*John P. McGloin* for the plaintiffs.

*Michael P. Marnik* for the defendant.

ABRAMS, J. In this action, the plaintiffs allege that their dwellings were destroyed by a fire proximately caused by the

[1] Juana Rosario, Martin Castillo, Alejandro Nunez, Victor Castillo, Manuel Nunez, and Seferina Ramos.

dangerous and hazardous conditions maintained by the defend-
ant on an adjacent property. The defendant's answer was a
denial, and an affirmative defense that, on the date of the fire,
September 9, 1982, the owner of the property was the city of
Lynn, because, on August 13, 1982, a final decree in the city's
tax lien case against the defendant had been recorded. In its
answer, the defendant claimed that it "was not in control, did
not own nor have any interest in the premises" on the date of
the fire. The defendant moved for judgment on the pleadings.
Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974). A Superior
Court judge allowed the defendant's motion, and we granted
the plaintiffs' application for direct appellate review. We re-
verse.

The effect of a motion for judgment on the pleadings is "to
challenge the legal sufficiency of the complaint." *Burlington
v. District Attorney for the N. Dist.*, 381 Mass. 717, 717-718
(1980). See *Liberty Mut. Ins. Co.* v. *United States*, 490 F.
Supp. 328, 329 n.1 (E.D.N.Y. 1980) ("On a 12 [c] motion,
the movant is deemed to admit his adversary's allegations of
fact; the movant's allegations, conversely, are taken as true
only if specifically admitted by the adversary"). "For purposes
of the court's consideration of the [rule 12 (c)] motion, all of
the well pleaded factual allegations in the adversary's pleadings
are assumed to be true and all contravening assertions in the
movant's pleadings are taken to be false." 5 C.A. Wright &
A.R. Miller, Federal Practice and Procedure § 1368, at 691
(1969).

The essence of the complaint is that the defendant's property
was in a dangerous and hazardous condition, and that the
condition of the property created a nuisance for which the
defendant was liable. The plaintiffs assert that "[a]s a direct
and proximate result of the nuisance created or allowed to exist
by the defendant and the negligence, or intentional acts of the
defendant as aforesaid, the plaintiff[s'] personal property and
[that] of the plaintiff[s'] famil[ies] [was] damaged and de-
stroyed by fire, all to the plaintiff[s'] damage."

The parties do not dispute the fact that on the date of the
fire, September 9, 1982, the defendant did not own the property

because on August 13, 1982, the city of Lynn had recorded a final decree in its tax lien case against the defendant. The complaint, however, does allege that the defendant continued to maintain the nuisance "for several days" after the city recorded its tax lien.

The narrow issue before us is whether the fact that title to the property was in the city of Lynn insulates the defendant from any liability. We conclude that it may not, and therefore we remand for further proceedings.

A transfer of ownership of land does, in most cases, relieve the prior owner of liability for dangerous conditions existing on the land. See Restatement (Second) of Torts § 352 (1965). There is, however, an exception to this general principle which, on the pleadings before us, may apply to the instant case.

The "exception to the general rule of nonliability of the vendor is found in a number of cases where the land, when it is transferred, is in such condition that it involves an unreasonable risk of harm to those outside of the premises. In nearly all of the decided cases, this has amounted to either a public or a private nuisance, but this is clearly not essential. In such a case the vendor remains subject, *at least for a reasonable time,* to any liability which he would have incurred if he had remained in possession, for injuries to persons or property outside of the land, caused by such a condition. The reason usually given is the obviously fictitious one that by selling the land in such condition he has 'authorized the continuance of the nuisance.' A more reasonable explanation would appear to be merely that the vendor's responsibility to those outside of his land is regarded as of such social importance that he is not permitted to shift it, even by an outright sale" (emphasis supplied). W. Prosser, Torts § 64, at 413 (4th ed. 1971). The Restatement (Second) of Torts § 840A (1977) states that a transferor of land "upon which there is a condition involving a nuisance for which he would be subject to liability if he continued in possession remains subject to liability for the continuation of the nuisance after he transfers the land . . . until the vendee or lessee has had reasonable opportunity to discover the condition and abate it." See *id.,* § 373 (analogous

provision for negligence). See also *O'Connor* v. *Altus,* 67 N.J. 106, 114 (1975) ("liability for physical harm caused by a natural or artificial condition, of which the vendor has actual or constructive notice, involving unreasonable risk to persons on or off the land continues only until the vendee has had a reasonable opportunity to discover the condition and take appropriate precautions"). Cf. *Walter* v. *Wagner,* 225 Ky. 255, 258 (1928) ("the one who creates a nuisance on his land is not relieved from liability for the damage it occasions to others by a sale of the property. . . . [Liability] would continue until the liability of the purchaser becomes fixed").

Further, "[p]ublic policy in a civilized community requires that there be someone to be held responsible for a private nuisance on each piece of real estate, and, particularly in an urban area, that there be no oases of nonliability where a private nuisance may be maintained with impunity." *Kurtigian* v. *Worcester,* 348 Mass. 284, 291 (1965). Thus, an owner of land who has maintained a nuisance may not be discharged of responsibility for that nuisance merely by either failing to pay property taxes or by a transfer until the new titleholder has had a reasonable time to correct the nuisance. Resolution of the plaintiffs' claims is therefore contingent on the development of facts relative to the nature of the nuisance, the time at which the defendant relinquished control of the property, and whether the period commencing on the date on which the city assumed control and ending on the date of the fire was reasonably sufficient to permit the city to abate the particular nuisance.

Our decision is not inconsistent with *Kurtigian* v. *Worcester, supra,* relied on by the defendant. In that case, liability for a private nuisance was imposed on the defendant city, which had recorded an instrument of taking nine years before the plaintiff's injury. We held that, despite the fact that the city had not foreclosed the prior owner's right of redemption until after the injury, "the city's right to possession long preceded the date of injury." *Id.* at 287. We stated that "[l]iability for damage caused by the defective condition of premises turns upon whether a defendant was in control, either through ownership or otherwise," *id.* at 285, and concluded that the nuisance

"was on land owned by and subject to the control of the city." *Id.* at 290. Because the city was liable,[2] we specifically did not reach the issue of the liability of the prior owner. *Id.* at 285-286.

Because in some limited circumstances a prior owner of real estate may be liable for a nuisance even after the transfer of title to the property, the plaintiffs' complaint is legally sufficient to survive a motion under Mass. R. Civ. P. 12 (c).[3] The judgment is reversed and the matter remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[2] The city of Lynn has not been joined as a defendant in this action, and no issues relating to its liability are before us.

[3] The defendant also argues that the plaintiffs' pleadings are defective in that they fail to allege certain specific facts, they fail to show the causal link between the alleged nuisance and the fire, and they insufficiently state a claim of nuisance. Under our rules of civil procedure, such defects do not warrant judgment on the pleadings.

"Under Mass. R. Civ. P. 8, 365 Mass. 749 (1974), intendments are to be made in favor of the pleader, rather than against him, and we resist any tendency to reinstate abandoned pleading requirements. *Charbonnier* v. *Amico,* 367 Mass. 146, 152-153 (1975). Legal conclusions are not frowned on, if the defendant is fairly notified of the nature of the claim and the grounds on which the plaintiff relies. *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957)." *Druker* v. *Roland Wm. Jutras Assocs.,* 370 Mass. 383, 385 (1976).