Wexler, James H., J.
Pursuant to G.L. 30A, §14, Plaintiff Travis Vallee (hereinafter “Vallee”) seeks judicial review of the decision of the Massachusetts State Lottery Commission (hereinafter “the Commission”), dated December 6, 2002, in which the Lottery’s denial of Vallee’s $1 million claim was upheld. Arguing that the Commission’s decision was arbitrary and capricious, Vallee moves for judgment on the pleadings under Mass.R.Civ.P. 12(c), and asks that the Commission’s decision be set aside. Vallee argues that he was not bound by terms stated on the reverse side of the Caesars Palace instant game ticket, that the Commission indicated that a liability was created by the design of the ticket, and that the Commission failed to address an alleged ambiguity created by the instructions on the Caesars Palace instant game ticket. Vallee’s motion was heard by the Court on June 27, 2005. Vallee fails to meet his burden of establishing that the Commission made an invalid decision, and his motion is denied.
As stated in Minaya v. Massachusetts Credit Union Share Ins. Corp., “(t]he effect of amotion for judgment on the pleadings is ‘to challenge the legal sufficiency of the complaint.’ ” 392 Mass. 904, 905 (1984) (quoting Burlington v. District Attorney for the N. Dist., 383 Mass. 717, 717-18 (1980)). “For the purposes of the court’s consideration of the [Rule 12(c) motion], all of the well pleaded factual allegations in the adversary’s pleadings are assumed to be true and all contravening assertions in the movant’s pleadings are taken to be false.” Minaya, 392 Mass. at 905 (quoting 5 C.A. *667 Wright & A.R. Miller, Federal Practice and Procedure §1368, at 691 (1969)).

BACKGROUND

A. CAESARS PALACE

The Massachusetts State Lottery (“the Lottery”) sells instant scratch tickets. Caesars Palace is one such instant game ticket.
The top of a Caesars Palace ticket states:
TEN $1,000,000 INSTANT PRIZES! 9690 PRIZES VALUED AT $1,000 TO $50,000!
Below this message are two game areas with multiple removable surfaces (hereinafter “play spots"). The left side of the ticket is labeled “ROULETTE,” and contains a “Winning Number” play spot, as well as five “Your Numbers” play spots. These play spots are all marked with a roulette wheel symbol, which is removed to reveal indicators of a winning or losing ticket. Immediately below these play spots, the left side of the ticket reads:
Match any of Your Numbers to the Winning Number, win prizes shown. Get a ($$) symbol, win that prize automatically.
2,310 TRIPS FOR TWO TO SPECTACULAR CAESARS PALACE IN LAS VEGAS.
The right side of the ticket is labeled “DICE,” and contains a “Winning Number” play spot and five “Your Numbers” play spots. These play spots are all marked with the symbol of a pair of dice, which is removed when the player scratches the surface to reveal whether the ticket is a winning ticket. Immediately below these play spots, the right side of the ticket reads:
Match any of Your Numbers to the Winning Number, win prizes shown. Get a 7 or an 11, win that prize automatically.
Directly in the middle of the ticket sits a caricature of Caesar, and statements reading:
OVER $114,700,00 IN PRIZES! WIN UP TO 10 TIMES!
Get a Caesars (*) symbol in any spot win all ten prizes
“VOID IF REMOVED” is written across the bottom of the ticket, on the right-hand side, on a removable surface that covers a Lottery Validation Number. When a player attempts to claim a prize in exchange for a winning ticket, this number is checked against an online database which lists the winning tickets by number.
The back of a Caesars Palace ticket states:
Ticket void if not in conformance with Lottery Regulations; defective; mutilated; altered; unissued; stolen; miscut; “VOID IF REMOVED” covering is not intact; ticket fails any lottery validation requirement; one and only one play number or symbol does not appear in each designated play area; play symbols or numbers are not intact or are inconsistent . .. ALL HOLDERS, TICKETS AND TRANSACTIONS SUBJECT TO LOTTERY COMMISSION RULES AS PUBLISHED IN THE MASSACHUSETTS REGISTER AND THE ADMINSTRATIVE BULLETIN ISSUED THEREUNDER.
A copy of the front and back of the ticket is attached as an appendix to this decision.

B. LOTTERY REGULATIONS

Pursuant to G.L.c. 10, §24, the Commission is authorized to “establish, and from time to time revise, such rules and regulations as it deems necessary or desirable and shall file the same with the office of the state secretary.” The rules governing instant game tickets are set forth in 961 Code Mass. Regs. 2.31. Among these regulations is the requirement that “(t]he prize winner must submit a winning Lottery ticket to be eligible to claim a prize. To be a valid instant winning ticket entitled to a prize, the following conditions must be met: (a) The on-line system must indicate that the ticket is a winner.” 961 Code Mass. Regs. 2.31.
An instant game ticket is void if it “fails to meet any requirement contained in the Administrative Bulletin issued by the Director for any particular Instant Game.” See, 971 Code Mass. Regs. 231 (3)(l)(o). Pursuant to this regulation, the Lottery issued Administrative Bulletin 197, governing Caesars Palace, and including the following provisions:
In Roulette, if the ticket bearer matches any of Your Numbers to the Winning Number, the player wins the prize shown for that matched number. If the player gets a symbol, the player wins the prize shown for that symbol automatically.
In Dice, if the ticket bearer matches any of Your Numbers to the Winning Number, or the player gets a 7 or 11 in any spot, the player wins the prize shown for that 7 or 11 automatically.
If the player gets a “Caesar’s” symbol in any spot, the player wins all ten prizes.
Administrative Bulletin 197 also requires that:
The Validation Numbers of apparent winning tickets of $40 and above shall appear on the Lottery’s validation records of winning tickets; such Validation Numbers must be in the correct Pool specified on the list, and a ticket with those Validation Numbers in that Pool shall not have been previously paid . . . The ticket must pass all additional confidential validation tests of the lottery . . . Any ticket not passing all the validation checks in the Ticket *668 Validation Requirements is void and ineligible for any prize and shall not be paid.
C. VALLEE’S CLAIM
In August 2001, Vallee purchased a Caesars Palace instant game ticket. He scratched off play spots on the ticket, and uncovered a number 7 in the Roulette game area, on the left side of the ticket. Vallee went into a store, and presented the ticket claiming a $1 million prize.
The clerk at the store scanned the ticket. When it did not register as a winning ticket, he advised Vallee to take the ticket into the Massachusetts State Lottery headquarters in Braintree, Massachusetts (hereinafter “the Lottery”). Vallee called the Lottery, and was told that his ticket was not a winning ticket.
On August 15, 2001, Vallee submitted a claim form to the Lottery, along with the disputed ticket.
On August 24, 2001, a Lottery official scanned Vallee’s ticket through a validation terminal; the test indicated that the ticket was not a winning ticket. On the same day, the Lottery official informed Vallee[1] that the disputed ticket was not a winning ticket.
On or about September 19, 2001, Vallee appealed the decision of the Lottery, pursuant to 801 Code Mass. Regs. 1.02[2] and 961 Code Mass. Regs. 2.38(5).[3]
On October 29, 2001, the Commission[4] held a hearing on Vallee’s appeal. Testimony was presented by Vallee and by the lottery official that had scanned the disputed ticket. The Commission concluded that the Lottery was correct to deny Vallee’s $1 million claim.
On January 3, 2003, Vallee filed a complaint seeking judicial review of the Commission’s decision.

DISCUSSION

The Commission upheld the Lottery’s denial of Vallee’s $1 million claim on the basis that Vallee had entered into a bilateral contract with the Lottery through his purchase of the Caesars Palace ticket, and had therefore agreed to the terms printed on the ticket. Because the ticket expressly stated the validation requirement and governance of the rules set forth in Administrative Bulletins,[5] the Commission held that Vallee was put on notice of these terms at the time of his purchase, and was bound by the results of the validation testing. The Commission further held that the ticket’s color-coding and placement of instructions eliminated the possibility of ambiguity.
The standard for judicial review of administrative decisions is set forth in G.L.c. 30A, §14(7), which provides that:
The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is:
(a) In violation of constitutional provisions; or
(b) In excess of the statutory authority or jurisdiction of the agency; or
(c) Based upon an error of law; or
(d) Made upon unlawful procedure; or
(e) Unsupported by substantial evidence; or
(f) Unwarranted by facts found by the court on the record as submitted or as amplified under paragraph (6) of this section, in those instances where the court is constitutionally required to make independent findings of fact; or
(g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.
Vallee bears the burden of demonstrating the invalidity of the Commission’s ruling. Merisme v. Bd. of Appeals on Motor Vehicle Liab. Policies and Bonds, 27 Mass.App.Ct. 470, 474 (1989). The Court must “give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it.” G.L.c. 30A, §14(7).
Vallee claims the Commission’s decision was arbitrary and capricious. He asserts that the Commission stated that the design of the Caesars Palace ticket created substantial liability to Vallee,[6] and also asserts that the Commission did not address the issue of alleged ambiguity of the statement printed below the game of dice, “get a 7 or an 11, win that prize automatically.” He argues that the terms printed on the reverse side of the ticket[7] are not binding, and that the alleged conflict between the instructions on the front of the ticket and the language on the reverse must be interpreted against the interests of the Lottery, as the drafter of the language. For the reasons set forth, the Court denies Valle’s claim.
A. ALLEGED AMBIGUITY
Vallee incorrectly asserts that page 13 of the Commission’s decision stated that the Caesars Palace ticket created substantial liability to Vallee. The Commission explicitly stated that the Lottery has created no such liability:
Even though it is clear that, as a factual matter, Mr. Vallee’s Caesars Palace instant game ticket is not a winning ticket, the question remains as to whether, as a legal matter, the Lottery’s design of the Caesars Palace instant game ticket inadvertently created substantial unintended liability to Mr. Vallee and other customers. As set forth below, the Director has persuasively established that the Lottery has no such liability.
Vallee v. Director of the Mass. State Lottery Comm’n at 13, Mass. State Lottery Commission, Dec. 6, 2002) (hereinafter ‘‘Vallee”) (emphasis added.) Vallee is also incorrect in stating that the Commission did not address the alleged ambiguity in the Caesars Palace ticket. The Commission thoroughly and correctly addressed the issue as follows:
*669 Mr. Vallee contends that use of the phrase “Get a 7 or 11 in any spot” under the Dice game creates an ambiguity in the contract between Mr. Vallee and the Lottery that must be construed against the drafter of the contract — i.e., the Lottery itself. As an initial matter, however, an ambiguity is not created simply because a controversy exists between Mr. Vallee and the Lottery, each favoring an interpretation of the Caesars Palace ticket contrary to the other’s interpretation. See Jefferson Insurance Company of New York v. Holyoke, 23 Mass.App.Ct. 472, 475 (1987). Moreover, whether there is any such ambiguity in the Caesars Palace instant game can only be determined in the context of the entire contract. See id.
Valleeat 15. Thus, the Commission did indeed address the alleged ambiguity, and the Court finds the Commission’s denial of the existence of an ambiguity to be sound. The courts have also denied any ambiguity in the Caesars Palace ticket. Bussey v. Mass. State Lottery Comm’n., Norfolk Superior Court, Civil Action No. 03-00005 (May 6, 2004) (Dortch-Okara, J.) (“A glance at each side of the front of the ticket reveals the fact that each game has its own rules that are shown in red below the game symbol which cover the numbers”); Sullivan v. Mass. State Lottery Comm’n, Suffolk Superior Court, Civil Action No. 03-0144B (September 25, 2003) (Hinkle, M.) (hereinafter “Sullivan”) (“[f|rom the design of the front of the game ticket itself, I find and rule that the Caesars Palace instant game ticket includes two separate games with two separate sets of instructions”).
As stated by the Commission,[8] the color schemes, imagery and placement of instruction on the Caesars Palace ticket clearly indicate which rules are intended to govern the two games. Because the Commission made a valid finding that there is no ambiguity in the language on the front of the ticket, there is no basis for Vallee’s argument that the instructions are in conflict with the terms on the reverse of the ticket. Thus, Vallee fails to establish that the Commission’s ruling on this issue was invalid pursuant to G.L.c. 30A, §14(7).

B. CONTRACTUAL OBLIGATION

The Commission has asserted that by purchasing a Caesars Palace ticket, Vallee accepted the terms printed on the back of the ticket.[9]
In Ruggiero v. State Lottery Commission, the court held that the purchaser of a scratch ticket implicitly accepted the terms on the reverse side of the ticket. 21 Mass.App.Ct. 686, 689 (1986). In Sullivan, the court ruled that the purchaser of a Caesars Palace ticket is “presumed to have reasonable notice of the pertinent rules governing the Caesars Palace instant game.” Sullivan at 10.
The terms on the reverse side of the Caesars Palace ticket state:
Ticket void if not in conformance with Lottery Regulations . . . ticket fails any lottery validation requirement . . . ALL HOLDERS, TICKETS AND TRANSACTIONS SUBJECT TO LOTTERY COMMISSION RULES AS PUBLISHED IN THE MASSACHUSETTS REGISTER AND THE ADMINISTRATIVE BULLETIN ISSUED THEREUNDER.
Given that these terms govern the contract formed between Vallee and the Lottery, Vallee must accept the results of the Lottery’s validation testing of his ticket. The disputed ticket failed the Lottery’s validation testing and therefore is not a winning ticket.
Furthermore, these terms subject the ticket to the Lottery’s rules, as stated in the Massachusetts Register and Administrative Bulletins. Administrative Bulletin 197, which specifically governs Caesars Palace, explicitly distinguishes between the instructions for the Dice and Roulette games.[10]
Vallee fails to establish that the Commission’s decision was arbitrary and capricious, or otherwise invalid, pursuant to G.L.c. 30A, §14(7). The Court upholds the Commission’s finding that there is no ambiguity in the instructions on the face of the Caesars Palace ticket, and that Vallee’s ticket is subject to the terms printed on the reverse of the ticket.

ORDER

Vallee’s motion for judgment on the pleadings is hereby denied.

The pleadings do not state the form of this communication.

 801 Code Mass. Regs. 1.02(6)(b) provides that “[a] right to request an Adjudicatory Proceeding shall arise when controversy exists which by law or Agency regulation requires an Adjudicatoiy Proceeding, or when a Person is aggrieved by an Agency.”

Code Mass. Regs. §2.38(5) states, “[I]f the claim is invalidated, the claim is denied and the Director will promptly notify the claimant. The claimant, if aggrieved, shall have a right pursuant to M.G.L.c. 30A to appeal the decision to the Commission.”

The hearing was presided over by Gerald McDonough, Deputy Treasurer and General Counsel of the Office of Treasurer.

The back of a Caesars Palace ticket states:
Ticket void if not in conformance with Lottery Regulations; defective; mutilated; altered; unissued; stolen; miscut; “VOID if REMOVED” covering is not intact; ticket fails any lottery validation requirement; one and only one play number or symbol does not appear in each designated play area; play symbols or numbers are not intact or are inconsistent . . . ALL HOLDERS, TICKETS AND TRANSACTIONS SUBJECT TO LOTTERY COMMISSION RULES AS PUBLISHED IN THE MASSACHUSETTS REGISTER AND THE ADMINISTRATIVE BULLETIN ISSUED THEREUNDER.

Vallee cites page 13 of the Commission’s decision, but does not point to specific language or otherwise explain this assertion. The language on page 13 is examined in the following section.

Supra, n. 5.

The Commission further stated:
*670 The design of the face of the Caesars Palace instant game ticket, as opposed to a scratched version of the ticket, demonstrates that there are two separate games on the ticket with their own separate set of rules. For example, the Roulette game’s colors are the opposite of the colors in the Dice game — in Roulette, the Winning Number’s background color is orange and the Your Numbers’ background color is purple, while in Dice, the Winning Number’s background is purple and the Your Numbers’ background is orange. Additionally, the play spots in the Roulette game are covered by a caricature of a roulette wheel, while the play spots in the Dice game are covered by a caricature of a pair of dice.
VaUee at 16.

Supra, n. 5.

 Administrative Bulletin 197 states:
In Roulette, if the ticket bearer matches any of Your Numbers to the Winning Number, the player wins the prize shown for that matched number. If the player gets a “$$” symbol, the player wins the prize shown for that symbol automatically.
In Dice, if the ticket bearer matches any of Your Numbers to the Winning Number, or the player gets a 7 or 11 in any spot, the player wins the prize shown for that 7 or 11 automatically.
Administrative Bulletin 197 also reinforces that any ticket must be found to be a winner by the validation system in order to truly be a winning ticket:
The Validation Numbers of apparent winning tickets of $40 and above shall appear on the Lottery’s validation records of winning tickets: such Validation Numbers must be in the correct Pool specified on the list, and a ticket with those Validation Numbers in that Pool shall not have been previously paid . . . The ticket must pass all additional confidential validation tests of the lottery . . . Any ticket not passing all the validation checks in the Ticket Validation Requirements is void and ineligible for any prize and shall not be paid.